STATE OF WEST VIRGINIA

SUPREME COURT OF APPEALS

**AVALOTIS CORPORATION,**
**Employer Below, Petitioner**

**vs.)    No. 20-0124** (BOR Appeal No. 2054464)
                  (Claim No. 2016028785)

**JOSEPH HARPER,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Avalotis Corporation, by Counsel Robert J. D'Anniballe Jr., appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review").[1]

The issue on appeal is an additional compensable condition. The claims administrator denied the addition of reactive airway dysfunction syndrome ("RADS") to the claim on June 27, 2018. The Workers' Compensation Office of Judges ("Office of Judges") reversed the decision in its July 12, 2019, Order and added RADS to the claim. The Order was affirmed by the Board of Review on January 24, 2020.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

On March 25, 2016, Mr. Harper, the claimant in this case, was exposed to sulfur dioxide in the course of his employment. He sought treatment the following day from MedExpress. Mr. Harper reported that he and his coworkers were exposed to sulfur dioxide levels of fifty parts per million. The level is supposed to be under two parts per million. Mr. Harper was diagnosed with unspecified lung injury and advised to seek treatment at the emergency room. Mr. Harper did and was seen at Camden Clark Medical Center Emergency Room. He reported eye irritation and shortness of breath after exposure to sulfur gas at work. Mr. Harper reported a recent air reading

---

[1] A response was not filed.

1

of forty parts per million and stated that some of his coworkers were also ill. X-rays showed minor atelectasis in the left lung and a three-millimeter subpleural nodule. A chest CT scan showed minor atelectasis in the left lung base and a three-millimeter subpleural nodule in the right middle lobe.

The Employees' and Physicians' Report of Injury was completed on May 8, 2016, and indicates Mr. Harper was overexposed to flue gases at work. The physicians' section was completed by Tyler Fisher, PA, at MedExpress, who indicated Mr. Harper sustained an inhalation injury to his lungs.

Mr. Harper sought treatment from Michael Cheshire, D.O., on June 3, 2016, for shortness of breath. He was diagnosed with non-asthma reactive airway disease and elevated liver enzymes. It was noted that Mr. Harper quit smoking in November of 2015. He was referred to a pulmonologist.

On March 6, 2017, Mr. Harper testified in a deposition that he smoked a pack of cigarettes every two to three months for about ten years. He stopped smoking in 2015. Mr. Harper stated that he first noticed occupational exposure symptoms when he developed congestion a few weeks after he began working for the employer. Mr. Harper testified that some of his coworkers developed rashes on their arms and legs. He also testified that on the day he stopped working, work was stopped due to symptoms he and his coworkers were experiencing. He stated that there was a visible, very open leak in the main duct found that day. Altogether, nine employees sought medical treatment for symptoms related to the exposure. Mr. Harper stated that he believed he was exposed to sulfur dioxide the entire time he worked for the employer because he could smell it. On cross-examination, Mr. Harper stated that he had a respirator and used it five to ten times per shift depending on the air quality.

A May 23, 2017, treatment note by John Parker, M.D., indicates Mr. Harper was diagnosed with mild, intermittent asthma; shortness of breath; cough; RADS; and asthma due to inhalation of fumes. A methacholine challenge test was abnormal.

Angelo Constantino, M.D., performed an independent medical evaluation on July 27, 2017, in which he determined that Mr. Harper did not have occupational asthma. He found that Mr. Harper had a normal methacholine challenge test and normal pulmonary function studies. Dr. Constantino further stated that samples taken from Mr. Harper's workplace showed sulfur dioxide levels at normal levels. Dr. Constantino found no evidence of lung disease that might mimic occupational asthma or restrictive airway disease. He opined that Mr. Harper's symptoms were consistent with those of a smoker. Dr. Constantino opined that there was no credible evidence that Mr. Harper sustained a work-related lung injury as a result of sulfur dioxide exposure.

Stuart Brooks, M.D., performed a Physician Review on November 6, 2017, in which he found that the methacholine challenge test showed borderline or normal bronchial responsiveness. He stated that this excludes current reactive airways or asthma. Dr. Brooks stated that exposure to significantly high levels of sulfur dioxide can cause RADS, but there is no objective evidence that Mr. Harper was exposed to hazardous levels at work. Dr. Brooks found that Mr. Harper's

spirometric measurements were normal. Dr. Brooks opined that Mr. Harper did not meet the diagnostic criteria for RADS. Mr. Harper had reached maximum medical improvement.

Dr. Parker testified in a November 10, 2017, deposition that he practices pulmonary critical care, occupational lung disease medicine, sleep medicine, and internal public health at WVU School of Medicine. He further stated that he is board certified in internal medicine, pulmonary disease. He is also a NIOSH B reader. Dr. Parker noted that pulmonary function tests were performed a year after the chemical exposure and showed normal results trending toward mild airflow obstruction. The methacholine challenge was mildly abnormal. Dr. Parker diagnosed RADS and irritant-induced asthma due to Mr. Harper's occupational work exposure. Dr. Parker disagreed with the opinions of Drs. Brooks and Constantino. Dr. Parker found that Mr. Harper's symptoms are common symptoms of RADS. Dr. Parker noted that Mr. Harper had no preexisting respiratory symptoms and that his symptoms developed following a specific exposure, for which Mr. Harper sought emergency treatment. Dr. Parker was questioned regarding the levels of sulfur dioxide measured at Mr. Harper's job site. Dr. Parker stated that one must consider that measurements are not always performed at the specific area Mr. Harper was working in, so it can be difficult to determine Mr. Harper's exact exposure level.

On February 1, 2018, the Office of Judges reversed a May 18, 2016, claims administrator decision and held the claim compensable for inhalation injury to the lungs. The Office of Judges found that the exact level of sulfur dioxide Mr. Harper was exposed to could not be determined, but he was exposed to elevated levels. The Office of Judges stated that the claims administrator's decision was made prior to Dr. Parker's diagnosis of RADS. It therefore gave the claims administrator the opportunity to address the diagnosis in a separate Order. The decision was affirmed by the Board of Review on July 19, 2018. The claims administrator denied the addition of RADS to the claim on June 27, 2018.

In its July 12, 2019, Order, the Office of Judges reversed the claims administrator's denial of the addition of RADS to the claim. It found that Mr. Harper and several of his coworkers were exposed to sulfur dioxide at their place of employment. Several employees sought medical treatment for the exposure, including Mr. Harper. Mr. Harper was diagnosed with inhalation injury to both lungs and referred to Dr. Parker, a pulmonologist. Dr. Parker examined Mr. Harper and reviewed his diagnostic studies. Dr. Parker concluded that Mr. Harper developed RADS and irritant induced asthma due to his work-related chemical exposure. The Office of Judges found Dr. Parker's report and opinion to be reliable and supported by the evidence of record.

The Office of Judges found Dr. Brooks' report to be unpersuasive. Dr. Brooks concluded that Mr. Harper did not meet the diagnostic criteria for RADS because there was no documented evidence that he was exposed to high levels of sulfur dioxide at work. He further stated that Mr. Harper's methacholine challenge test was normal. The Office of Judges noted that in a prior February 1, 2018, decision, the Office of Judges found Dr. Brooks' report to be less reliable because he only performed a record review. The Office of Judges also found in its prior Order that Dr. Constantino's report was less reliable than that of Dr. Parker due to the long time period between Mr. Harper's exposure and Dr. Constantino's examination. The Office of Judges ultimately found Dr. Parker's opinion that Mr. Harper developed RADS due to occupational

3

chemical exposure to be persuasive. The Office of Judges concluded that Mr. Harper was exposed to sulfur dioxide levels higher than ordinary in ambient air. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on January 24, 2020.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. The reports of Drs. Brooks and Constantino rely on the assumption that Mr. Harper was not exposed to high levels of sulfur dioxide at work. Though the measurements taken at Mr. Harper's place of employment show normal levels, the evidence indicates Mr. Harper was exposed to excess levels of sulfur dioxide in the course of his employment. Significantly, Mr. Harper was not the only person to develop symptoms that day. Several of his coworkers also sought treatment for the chemical exposure. Mr. Harper sought treatment the day after the exposure occurred and was diagnosed with an inhalation injury to the lungs. Dr. Parker's opinion is well supported by the evidence of record. The claim was properly held compensable for RADS.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the Board of Review's findings, reasoning, and conclusions, there is insufficient support to sustain the decision. Therefore, the decision of the Board of Review is affirmed.

Affirmed

**ISSUED: March 19, 2021**

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton